UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SARAH ANN DEITER,

        Plaintiff,                       Case No. 2:16-cv-189

v.                                     HON. TIMOTHY P. GREELEY

COMMISSIONER OF SOCIAL SECURITY,

        Defendants.
_____/

## OPINION

In June of 2012, plaintiff Sarah Ann Deiter filed an application for Supplemental Security Income Benefits. (ECF No. 11-3, PageID.110). Plaintiff alleges that she suffers from problems associated with a thyroid nodule, family history of CAD, elevated AST (SGOT), hematochezia, abdominal pain, leukocytosis, tachycardia, sarcoidosis of the lung, Irritable Bowel Syndrome (IBS), hilar adenopathy, arthralgia, lumbar pain, intertrigo, elevated liver function tests, fibromyalgia, depression, vitamin D deficiency, anxiety, hyperlipidemia, hypertension, metabolic syndrome, diabetes, sleep apnea, manic episode without psychosis, insomnia, fatigue, and an ovarian cyst. Plaintiff asserts that these impairments cause her disability. Plaintiff's application was denied initially and plaintiff requested an administrative hearing before an Administrative Law Judge (ALJ). (ECF No. 116-118). ALJ Patrick Toal, held a hearing on November 13, 2014. (ECF No. 11-2, PageID.61-95).

Plaintiff was represented by counsel at the hearing. Plaintiff and vocational expert Emily Veith testified. Plaintiff was 40 years old at the time of the hearing. (PageID.65). Plaintiff

lived with her two daughters, grandson, and her significant other. (PageID.67). She has a driver's license, but does not drive often. (PageID.68). Plaintiff can maintain her hygiene and prepare meals. (PageID.70-71). Most days, plaintiff can perform household chores such as washing dishes, dusting, sweeping, mopping, and laundry. (PageID.72). Plaintiff has trouble repetitively folding the laundry due to the required arm movement. Plaintiff is able to shop. During the day she listened to music and tries to do housework, but nothing really gets accomplished. (PageID.73). Plaintiff reads a book or does a crossword puzzles but has problems staying focused. (PageID.73-74). She takes care of her dogs. (PageID.78). Plaintiff has taken care of her grandson when he was younger, but cannot handle him anymore. (PageID.79). Plaintiff has trouble finishing chores due to pain from Fibromyalgia. (PageID.82). Plaintiff states that for one half a month she cannot perform any activities. (PageID.83). Plaintiff indicated that she was suffering from severe stomach and upper abdomen pain. (PageID.92-93). Prior testing was negative and Plaintiff was awaiting the results of her recent colonoscopy. (PageID.93-94). Plaintiff stated that she experienced numbness, weakness, and tingling in her limbs. (PageID.94).

Plaintiff gets some relief from Klonopin, Cymbalta, amitriptyline, and Restoril. (PageID.76-77). Plaintiff uses a C-PAP, but not as often as she should. (PageID.78). She tries to take her doctor's advice and walk a little and stretch each day. (PageID.80). Plaintiff saw a rheumatologist who stated that there was nothing that could be done because she suffered with severe fibromyalgia and could not take any of the medications. Plaintiff's physician prescribed Cymbalta and narcotic pain medication. (PageID.87).

The vocational expert Emily Veith testified that an individual with no work experience, who is unable to lift or carry more than 10 pounds frequently, 20 pounds occasionally, unable to stand or walk more than 6 hours, climb ladders, ropes, and scaffolds, crawl more than

occasionally, climb stairs, kneel, crouch or crawl more than frequently, maintain attention and concentration to perform detailed tasks (limited to simple, routine, repetitive, low stress tasks with few job changes), limited problem solving or decision making, and unable to have more than occasional interaction with coworkers and supervisors, and no contact with the public could perform jobs in the Michigan economy. (PageID.88-89). Vocational expert Veith testified that a person with those limitations could work as a housekeeper (approximately 9,500 jobs in Michigan, 450,000 jobs nationally), shirt presser (780 jobs in Michigan, 51,000 jobs nationally), or hand packer (4,000 jobs in Michigan, and 200,000 jobs nationally). (PageID89-90). However, if that individual is limited to occasional use of the bilateral upper extremities for grasping, fingering and reaching overhead there would be no jobs that the individual would be able to perform. (PageID.91).

The ALJ found that plaintiff could perform jobs that existed in significant numbers in the national economy given plaintiff's residual functional capacity (RFC) and therefore concluded that plaintiff was not under a "disability" under the Social Security Act (20 C.F.R. § 416.920(g)). The ALJ's decision became the agency's final decision when the Appeals Council denied plaintiff's request for review. Plaintiff now seeks judicial review of the agency's final decision denying her request for disability benefits. Plaintiff then filed this action. [1]

"[R]eview of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Winslow v. Comm'r of Soc. Sec.*, 566 Fed. App'x 418, 420 (6th Cir. 2014) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); *see also* 42 U.S.C. § 405(g). The findings of the ALJ are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

---

[1]Both parties consented to proceed before a Magistrate Judge on April 22, 2014.

Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y, Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). This Court is not permitted to try the case *de novo*, nor resolve conflicts in the evidence and cannot decide questions of credibility. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (noting the ALJ's decision cannot be overturned if sufficient evidence supports the decision regardless of whether evidence also supports a contradictory conclusion). This Court is required to examine the administrative record as a whole and affirm the Commissioner's decision if it is supported by substantial evidence, even if this Court would have decided the matter differently. *See Kinsella v. Schwikers*, 708 F.2d 1058, 1059 (6th Cir. 1983); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (holding that the court must affirm a Commissioner even if substantial evidence would support the opposite conclusion).

The ALJ must employ a five-step sequential analysis to determine if plaintiff is under a disability as defined by the Social Security Act. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). If the ALJ determines plaintiff is or is not disabled under a step, the analysis ceases and plaintiff is declared as such. 20 C.F.R. § 404.1520(a). Steps four and five use the residual functional capacity assessment in evaluating the claim. *Id.* The ALJ determined that plaintiff was not engaged in substantial gainful activity since her June 27, 2012, application date, and that plaintiff had the severe impairments of fibromyalgia, hypertension, sarcoidosis, obesity, an affective disorder, an anxiety disorder, and a personality disorder. The ALJ noted that plaintiff has controlled diabetes, and non-severe impairments of the back, dental issues, thyroid nodule, hyperlipidemia, gastrointestinal issues, and sleep disorders. The ALJ found that plaintiffs'

4

impairments did not meet or medically equal the severity of one of the listed impairments in 20 C. F. R. part 404, Subpart P, Appendix 1. The ALJ determined that plaintiff has the residual functional capacity (RFC) to perform light work with additional limitations of: crawling, climbing ladders, ropes and scaffolds more than occasionally, stooping, kneeling, crouching or climbing ramps or stairs more than frequently, limited to simple, routine, repetitive and low stress tasks with few job changes and limited problem solving or decision making with no more than occasional interaction with coworkers and supervisors, with no public contact. The ALJ found that plaintiff could perform unskilled light duty jobs such as a housekeeper (approximately 9,500 jobs in Michigan, 450,000 jobs nationally), shirt presser (780 jobs in Michigan, 51,000 jobs nationally), or hand packager (4,000 jobs in Michigan, and 200,000 jobs nationally). This Court must affirm the ALJ's findings if sufficient evidence supports the decision even if evidence supports an alternative conclusion.

Plaintiff argues that the ALJ erred by granting little weight to treating physician Dr. Mary Myrick, some weight to the treating pulmonologist Dr. Ryan Hadley, and great weight to the State medical reviewer Dr. Joe DeLoach. Additionally, Plaintiff argues that the ALJ improperly evaluated her credibility. Plaintiff requests a remand to the Appeals Council for consideration of new material evidence.

Under the regulations, an ALJ must weigh all medical opinions regardless of its source. 20 C.F.R. § 1527(c). The following factors should be considered when determining what weight to afford a medical opinion: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 1527(c)).

5

An ALJ affords a treating physician's opinion controlling weight when the evidence and findings are consistent with the other substantial evidence on record. 20 C.F.R. § 1527(c)(2); *see Miller . Comm'r of Soc. Sec.,* 815 F.3d 825, 836-837 (6th Cir. 2016). (noting the weight assigned must account for the (in)consistency "among the examining sources and the record as a whole" and also consider the factors under 20 C.F.R. § 1527). Only when the ALJ does not afford great weight to a treating source's opinion is the ALJ required to apply and conduct an analysis of the factors under (c)(2)(i) and (c)(2)(ii), and (c)(3) through (c)(6). *Id.* Moreover, an ALJ is not required to rely on medical opinions concluding that a person is, or is not, disabled since that is an issue reserved to the Commissioner. 20 C.F.R. § 1527(d).

"As a procedural requirement, the ALJ must also provide 'good reasons' for discounting the weight to be given to a treating source's opinion." *Edwards v. Comm'r of Soc. Sec.*, 636 Fed. Appx. 645, 649 (6th Cir. 2016) (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013)). These reasons must be supported by the evidence and be noted with specificity "to ensure that the rule is applied and to permit meaningful review." *Id.* (citing *Gayheart*, 710 F.3d at 376).

In addition, "[s]tate agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence." *Hoskins v. Comm'r of Soc. Sec.*, 106 Fed. App'x 412, 415 (6th Cir. 2004); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 245 n.4 (6th Cir. 2007) (quoting SSR 96-6P) ("In appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."). Where the ALJ provides "good reasons" for discounting a treating physician's opinion, he was not required to

afford less weight to the state agency source's opinions as long as it was supported by the evidence of record. *See Helm v. Comm'r of Soc. Sec.*, 405 Fed. App'x 997, 1002 (6th Cir. 2011).

In his decision, the ALJ provided the following reasons for affording weight to the opinions of Dr. Myrick, Dr. Hadley, and state medical consultant DeLoach.

> The undersigned gives little weight to the opinions offered by Dr. Myrick (Exhibits 13F and 15F). In November of 2013, she opined that the claimant could sit for one hour per day and stand and/or walk for two hours per day (Exhibit 13F, p. 2). She further opined that the claimant could occasionally lift and/or carry up to five pounds and never lift and/or carry more than five pounds (Exhibit 13F, p. 2). Dr. Myrick also noted that the claimant could only occasionally grasp, turn, twist objects, perform fine manipulation with the hand and fingers and reach (Exhibit 13F, p. 2). Finally, she indicated that the claimant would miss work more than three times per month (Exhibit 13F, p. 2). The undersigned notes that Dr. Myrick acknowledged that the limitations were historical and that a functional evaluation with physical therapy would be necessary for more objective information (Exhibit 12F, p. 3). Moreover, Dr. Myrick also indicated that the claimant was a malinger (Exhibit 13F, p. 1). Dr. Myrick offered similar opinions regarding the claimant's functional limitations in September of 2014; at that time, she also noted her opinion that the claimant was unable to perform any gainful activity (Exhibit 15F, p. 1). The limitations offered by Dr. Myrick are out of proportion to her own observations and findings, which were relatively mild in nature. Moreover, Dr. Myrick's indication that the limitations were historical and that the claimant was a malingerer further suggest that her opinions regarding the claimant's functional limitations do not accurately reflect the claimant's true abilities. For these reasons, the undersigned gives little weight to the opinions offered by Dr. Myrick.
>
> The undersigned gives some weight to the September of 2014 opinions offered by Ryan Hadley, M.D. (Exhibit 16F). Dr. Hadley noted that he first saw the claimant in June of 2013 and that he last saw the claimant in October of 2013 (Exhibit 16F, p. 1). He opined that the claimant could sit for eight-hours per day but that the claimant's ability to sit and stand depended on her fatigue, which was subjective in nature (Exhibit 16F, p. 4). He noted that emotional factors contributed to the severity of the claimant's symptoms and limitations (Exhibit 16F, p. 5). He added that the claimant's impairments would likely cause "good days" and "bad days" and that the claimant would frequently experience fatigue or other

symptoms severe enough to interfere with her attention or concentration (Exhibit 16F, p. 6). Dr. Hadley's opinions are somewhat vague in nature and he acknowledged the subjective nature of the claimant's symptoms and limitations. Moreover, the objective medical evidence, the observations of examiners and the claimant's level of treatment suggest that the claimant retains greater functional abilities than those put forth by Dr. Hadley. Finally, the undersigned notes that the claimant had a relatively brief treatment history with Dr. Hadley. For these reasons, the undersigned gives only some weight to the opinions offered by Dr. Hadley.

The undersigned gives great weight to the opinions regarding the claimant's mental limitations offered by the State Agency medical consultant, Joe DeLoach, Ph.D. (Exhibit 1A). He opined that the claimant had mild restrictions of activities of daily living, mild difficulties maintaining social functioning and moderate difficulties maintaining concentration, persistence or pace (Exhibit 1A). He also noted that the claimant had not experienced any episodes of decompensation of an extended duration (Exhibit 1 A). Regarding the claimant's specific work- related mental abilities, Dr. DeLoach opined that the claimant retained the ability to perform simple tasks on a sustained basis, noting that the claimant could manage simple and repetitive tasks but that the claimant would likely need to work alone or in a job requiring no-to-minimal contact with the public (Exhibit 1 A). Dr. DeLoach's opinions generally are consistent with the claimant's level of treatment and with the observations of examiners. However, the undersigned included slightly greater social limitations in the above-referenced residual functional capacity after considering the claimant's subjective complaints.

(ECF No. 11-2, PageID.51-52).

Plaintiff argues that the medical evidence confirms that Plaintiff was being treated for fibromyalgia, sarcoidosis, diabetes, chronic bowel urgency, depression, hypertension, hyperlipidemia, insomnia, general weakness, memory impairment, and mental fog. Plaintiff argues that her examinations in May of 2014 and August of 2014 are consistent with Dr. Myrick's findings. In May of 2014, Plaintiff complained of "lower extremity weakness and numbness." (ECF No. 11-12, PageID.654). Dr. Jordan Povich wrote in his report that neurology could not "find focal problem." Dr. Povich noted that "Patient unable to get onto the table so could not get

8

her feet off the ground check DTR. Muscle strength to lower extremities appears to be 5/5 although she is slow to increase effort. Gait is slow but not necessarily wide based." (PageID.657). In August of 2014, Dr. Myrick conducted plaintiff's annual physical examination. (PageID.669-675). Dr. Myrick noted that plaintiff has a "[s]light decreased extension of her neck" with "[g]ood range of motion in her shoulders, [w]ith external rotation of the forearms against resistance." (PageID.673). Plaintiff became a "little shaky." She showed "some decreased strength with flexion at the hip" and "[g]ood dorsiflexion, bilaterally." Plaintiff had "some difficulty walking on her toes, specifically with the left side" and a slight limp when walking on her heels. *Id*. Plaintiff concludes that this limits "her ability to sustain walking for extended periods." (ECF No. 14-1, PageID.706). However, Dr. Myrick never made that conclusion, and in fact advised plaintiff to engage in "regular walking and stretching." (PageID.674).

Despite plaintiff's allegations to the contrary, the ALJ provided several "good reasons" for affording little weight to Dr. Myrick's medical opinions. The ALJ found that in November of 2013, Dr. Myrick stated that plaintiff's limitations were historical and that a functional evaluation with physical therapy was necessary to objectively determine her limitations. (ECF No. 11-11, PageID.607). The ALJ properly found that Dr. Myrick indicated that plaintiff was a "malingerer." (PageID.609 at 3b). A determination that a patient is a malingerer is "a specific, legitimate reason to discount the doctor's opinion regarding Plaintiff's physical RFC." *Leon v. Astrue*, 1:10-cv-77, 2011 WL 1077679 (E.D. Cal., Mar. 21, 2011). Finally, the ALJ noted that Dr. Myrick's observations and findings showed that plaintiff presented relatively mild limitations.

Plaintiff argues that the ALJ erred in only giving some weight to Dr. Hadley's opinions. Dr. Hadley completed a pulmonary impairment questionnaire in September of 2014.

9

(ECF No. 11-11, PageID.617-623). Dr. Hadley indicated that plaintiff had a good prognosis, with clinical findings of shortness of breath, overall weakness, and palpitations. Dr. Hadley found that plaintiff could sit during an eight hour day, and that he could not evaluate how long she could stand based upon subjective complaints of fatigue, but she had no limitations. Dr. Hadley opined that plaintiff had good days and bad days. The ALJ set forth a number of "good reasons" to afford some weight to Dr. Hadley's opinions. Dr. Hadley acknowledged that his opinions were "all based on subjective complaints," and were vague in nature. (PageID.622). An ALJ may discount opinions based on subjective complaints. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011); *Cosma v. Comm'r of Soc. Sec.*, 652 F. App'x 310, 311 (6th Cir. 2016). In addition, the ALJ stated "good reasons" for giving great weight to Dr. Deloach's opinions. It is further noted that plaintiff has failed to show how Dr. Deloach's assessment was contradicted by evidence in the record.

Plaintiff argues that the ALJ improperly evaluated her credibility by failing to provide clear and convincing reasons to support his determination. When an ALJ evaluates an individual's complaints of pain and disabling symptoms, the ALJ may consider the credibility of the person. *Walters Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Id.* (citing *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). An ALJ's determination of a plaintiff's credibility must be supported by substantial evidence. *Id.*; *Winslow*, 566 Fed. App'x at 422. Simply stating that plaintiff has pain or other symptoms is not sufficient to establish that the individual is disabled. *Walters*, 127 F.3d at 531 (citing 20 C.F.R. § 404.1529(a)). The ALJ must assess an individual's pain by using a two prong test:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Id.* (referencing *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994) (quoting *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)); *see also* 20 C.F.R. § 404.1529(a). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531 (citing *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988)). An ALJ can also consider an individual's ability to do household and social activities when assessing the credibility of a person's alleged pain and disabling symptoms. *Id.* at 532.

Contrary to plaintiff's assertions, the ALJ explained his reasons for concluding that plaintiff was not fully credible. The ALJ found that plaintiff's 2012 pulmonary function testing was essentially normal and the May of 2014 chest x-rays showed improvement compared to prior examinations. (ECF No. 11-2, PageID.48). In June of 2012, plaintiff reported that she used her inhaler four time per day, and smoked one pack of cigarettes per day. On examination, plaintiff's lungs were clear. *Id*. As of September 2012, plaintiff's sarcoidosis was well controlled. Plaintiff had good airway movement, with no wheezes, rales, or rhonchi. In October of 2012, plaintiff's lungs were clear and pulmonary function was within normal limits. (PageID.49). Plaintiff's prednisone was discontinued at that time. Plaintiff complained of shortness of breath and chest heaviness in November of 2012, but only mild respiratory abnormalities were noted. The ALJ noted that "the relatively mild respiratory abnormalities noted by Dr. Myrick and other examiners suggest that her symptoms are not as severe as alleged." *Id.* The ALJ found that "the objective x-ray findings, CT findings and pulmonary function test results are not consistent with the claimant's

subjective complaints regarding her physical limitations." (PageID.50). Moreover, the ALJ found that plaintiff had mild restrictions:

> The claimant has mild restrictions of activities of daily living. In August of 2012, the claimant reported that she needed some assistance bathing due to dizziness (Exhibit 4E, p. 12). She reported that she was able to prepare her own meals and perform basic housework such as light cleaning, doing small loads of laundry and doing dishes (Exhibit 4E, p. 13). She noted that she needed help encouragement with these tasks, specifically noting that she needed encouragement to get through the pain (Exhibit 4E, p. I3). At her November of 2012 consultative examination, the claimant reported lied in bed and listened to music most of the time, occasionally engaging in housecleaning and cooking (Exhibit 6F, p. 4). She reported that she bathed every two days and that she changed her clothes daily (Exhibit 6F, p. 5). This evidence suggests that the claimant's limitations with activities of daily living primarily are physical in nature and that the claimant has only mild mental limitations in this domain.
>
> The claimant has moderate difficulties maintaining social functioning. In August of 2012, the claimant reported that she only went outside once per week (Exhibit 4E, p. 14). She stated that she was able to drive and shop in stores but that she did not like to go out alone (Exhibit 4E, p. 14). At that time, she noted that she did not have any problems getting along with family, friends or neighbors (Exhibit 4E, p. 16). At her November of 2012 consultative examination, the claimant reported that she had a good relationship with her boyfriend of 18 years (Exhibit 6F, p. 4). She also reported that she got along well with her children (Exhibit 6F, p. 4). As discussed above, the claimant generally exhibited normal behavior during examinations and she only occasionally exhibited mild mood abnormalities. Overall, this evidence supports no more than moderate limitations in social functioning.
>
> The claimant has mild difficulties maintaining concentration, persistence or pace. In August of 2012, the claimant reported that she was able to pay bills, count change, handle a savings account and use a checkbook money orders (Exhibit 4E, p.14). At that time, she noted that her hobbies included reading, playing cards, playing board games and watching movies and sports, among other things (Exhibit 4E, p. 15). Her ability to manage money and engage in these hobbies reflects her retained concentration and persistence abilities. At her November of 2012 consultative examination, the claimant was able to repeat four numbers forward and two numbers

> backward (Exhibit 6F, p. 6). She was able to recall two of three items after a five- minute delay (Exhibit 6F, p. 6). The claimant subtracted serial sevens from 100 slowly and with errors (Exhibit 6F, p. 6). The claimant's reports and her performance during the consultative examination support no more than moderate limitations in concentration, persistence or pace.

(PageID.50-51).

The ALJ fully considered each of plaintiff's impairments, including fibromyalgia, in determining that plaintiff had the residual functional capacity for light work subject to restrictions to accommodate her medical conditions. Plaintiff has failed to show that the ALJ erred in considering her credibility based upon her ability to engage in activities and her objective medical records.

Plaintiff argues that the Court should remand the case to require the Appeals Council to consider new material medical evidence. Plaintiff presents a new letter, dated December 1, 2015, from Dr. Myrick in which she indicated that it was recently determined that plaintiff was not "malingering." Dr. Myrick's letter simply provides argument in response to the ALJ's opinion regarding "lack of observations and findings compared to assessed limitations" that she states is consistent with fibromyalgia. (ECF No. 11-12, PageID.693). The ALJ never determined that plaintiff did not have fibromyalgia. The AJL found that plaintiff had severe impairments that included fibromyalgia. The ALJ considered plaintiff's fibromyalgia in determining her functional residual capacity for work. In addition, plaintiff asserts that the Appeals Council should have considered outpatient Behavioral Health Psychological Testing Evaluation records dated October 29, 2015, which indicated that plaintiff was not malingering.

These records were considered by the Appeals Council at the time review of the ALJ's opinion was denied. ("We also looked at medical records from OSF Healthcare Systems, dated March 27, 2015 to May 28, 2015, Marquette General, dated September 12, 2015 to January

21, 2016, and UP health System dated October 29, 2015.") (ECF No. 11-2, PageID.29). Plaintiff asserts that the Appeals Council erred by upholding the ALJ's decision. It is first noted that this Court does not have jurisdiction to reverse the decision of the Appeals Council. *Casey v. Sec'y of Health & Human Servs.,* 987 F.2d 1230, 1233 (6th Cir. 1993). Remand to the Commissioner is the only remedy available to this court when new material evidence would likely change the outcome of this case.

> Pursuant to 42 U.S.C. § 405(g), sentence six states in relevant part:
>
> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; . . .

These requirements are fully explained in *Foster v. Halter*:

> [E]vidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Sullivan v. Finkelstein*, 496 U.S. 617, 626, 110 S. Ct. 2658, 110 L.E.2d 563 (1990). Such evidence is "material" only if there is "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). A claimant shows "good cause" by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ. *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (1984) (per curiam).

*Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). The Sixth Circuit has used a strict test for the "good cause" requirement in that "[t]he claimant must give a valid reason for failing to obtain relevant examinations prior to the hearing." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993).

14

Plaintiff presented these records to the Appeals Council. Evidence is "material" for a sentence six remand only if the Commissioner reasonably could have decided the disability claim differently with the new evidence. *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). The Appeals Council considered those records when denying review. Therefore, because the records failed to cause the Commissioner to decide the claim differently, remand is not appropriate in this case. Most importantly, there is substantial evidence in the record that supports the Commissioner's decision that plaintiff is not disabled as defined by the Social Security Administration.

Accordingly, the decision of the Commissioner is AFFIRMED and Plaintiff's request for relief is DENIED.

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: February 22, 2018